MURDOCK, Justice.
I. Facts and Proceedings Below
Kathy K, Torbert filed a petition with the Alabama Department of Public Health (“the Department”)[1] for a declaratory rul *599 ing with respect' to a proposed garbage-transfer station to be built near Torbert’s residence.[2] Among other relief requested, Torbert sought a declaratory ruling under Ala. Code 1975, § 41—22—11(b), regarding the meaning of the administrative regulations defining the minimum required buffer zones around a solid-waste-transfer station.[3] The portion of the dispute relevant to our decision concerns the starting point for measuring the required buffer zones.
The Department rejected Torbert’s proposed interpretation of the buffer-zone regulations. Torbert appealed the, ruling to the Montgomery Circuit Court. The circuit court remanded the case to the Department for additional factual findings, including the preparation of a revised land survey.[4] On remand, the survey was prepared and the Department made the necessary findings and reaffirmed its previous ruling. The circuit court subsequently affirmed the Department’s decision. Torbert appealed to the Court of Civil Appeals.
The Court of Civil Appeals unanimously affirmed the judgment, without an opinion. This Court granted certiorari review. We reverse and remand.
II. Standard of Review
Section 41-22-20(k), Ala. Code 1975, governs judicial review of administrative decisions and provides, in pertinent part:
“The court may reverse or . modify the decision or grant other appropriate relief from the agency action ... if substantial rights of the petitioner have been prejudiced because the agency action is any one or more, of the following:
[[Image here]]
“(3) In violation of any pertinent agency rule;
[[Image here]]
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
In Alabama Medicaid Agency v. Kerby, 84 So.3d 95, 97-98 (Ala.Civ.App.2011), the Court of Civil Appeals stated:
“ ‘This court has held that § 41-22-20(k) “recognizes the: general rule that judicial review of administrative decisions is limited in scope to whether the order is supported by substantial evidence, whether the agency’s decision is reasonable and not arbitrary, and whether the agency acted within its power conferred upon it by law and the constitution.” Ferlisi v. Alabama Medicaid Agency, 481 So.2d 400 (Ala.Civ.App.1985).’
“Alabama Medicaid Agency v. Norred, 497 So.2d 176, 176-77 (Ala.Civ.App.1986). In addition, ‘an agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ Ferlisi v. Alabama Medic *600 aid Agency, 481 So.2d 400, 403 (Ala.Civ.App.1985).”
(Emphasis added.)
Ill, Analysis
The solid-waste-transfer station at issue (“the transfer station”) is sited on a triangular parcel of land in Theodore that is bordered by Interstate 10, a public recreational park, and Carol Plantation Road. Torbert’s house is located across Carol Plantation Road from the transfer station, approximately 500 feet from the main building of the transfer station.
The transfer station includes a building that contains a concrete “tipping floor” and a loading bay. Local waste-collection trucks discharge their waste onto the tipping floor, where heavy equipment pushes or lifts the waste into an open-top trailer located in the adjacent loading bay (which is approximately seven feet below the level of the tipping floor). The waste is then hauled in the open-top trailer to a landfill or disposal facility.[5]
Alabama Admin. Code (State Board of Health), Rule 420-3-5-.03(64), defines “transfer station” as:
“(64) Transfer Station—any combination of structures, land, machinery or devices at a place or facility at which solid waste containing garbage, or scrap tires, is taken from transportation units and placed in other transportation units for movement to a solid waste handling or disposal facility. ...”.
(Emphasis added.) There is no dispute that the transfer station here is a “transfer station” under this definition.
The location of a transfer station is governed by Ala. Admin. Code (State Board of Health), Rule 420-3-5-12(2), which provides, in pertinent part:
• “(2) Location. The location of a transfer station shall meet the following siting requirements:
“(a) The facility shall be surrounded by buffer zones of the following proportions unless such facility is located in an area zoned industrial or commercial:
“1.100 feet between the area of transfer activities and all public roads and other property boundaries.
“2. 500 feet between the area of transfer activities or storage of garbage and the nearest residence, school or recreational park in existence at the time the application is filed.
“(b) Facilities located in urbanized areas or other locales that require the use of a small acreage lot may obtain approval from the Board for a reduced buffer zone, provided operations are enclosed and do not create a public health nuisance or hazard.”
(Emphasis added.)
This case presents a question of first impression regarding the Department’s interpretation of its regulations that govern the siting of solid-waste-transfer stations, specifically those regulations that define the starting point for measuring the required buffer zones around a solid-waste-transfer station.
The applicable regulations require a buffer zone of at least “500 feet between *601 the area of transfer activities or storage of garbage and the nearest residence, school or recreational park.”[6] Ala. Admin. Code (State Board of Health), Rule 420-3-5-.12(2)(a)2 (emphasis added). The term “area of transfer activities” is not defined in the regulations. The Department contends that “area of transfer activities” includes only the tipping floor; Torbert contends that the “area of transfer activities” also includes the loading bay. According to the survey conducted on remand, the tipping floor is located more than 500 feet from Torbert’s house, but the loading bay is less than 500 feet from her house.
The Department’s declaratory ruling included the following statement:
“A solid waste transfer station’s areas of transfer activity are those locations that have been designated for that purpose, or the storage of garbage, on the transfer station’s site plan. This Department has consistently used those designated locations as the points from which to measure the required buffer zones; not the site’s boundary. The area of transfer activity for this particular site has been designated as the tipping floor—the area in which the solid waste is transferred from one transportation unit to another for ultimate delivery to a landfill. No area on this site has been designated for storage of garbage. This site’s tipping floor was certified to be over 500 feet away from nearest residence, school or recreational park by the site’s engineer and this was verified by health department staff.”
(Emphasis added; footnote omitted.)
The Department contends that the “area of transfer activities” includes only the tipping floor, and it argues that “[t]he transfer of waste is complete when the waste leaves the tipping floor. Therefore, it is reasonable to limit the area of transfer activity to the tipping floor.” The Department also states that
“the loading bay is where the transport vehicles park to be loaded.... As discussed above, the waste is put in the transport vehicle instantaneously on leaving the tipping floor. Consequently, once the waste reaches the loading bay, the transfer of the waste from one vehicle to another is complete. As a result, the area of transfer activity, does not include the loading bay.”
The Department’s argument fails because it is based on an unreasonable meaning of the term “transfer.” The term “area of transfer activities” is not defined in the regulations, but it draws meaning from the term “transfer,” a term that means “to convey from one person, place, or situation to another: move, shift.” Merriam-Webster’s Collegiate Dictionary 1328 (11th ed. 2003). Logically, a “transfer” is not complete until the thing or item being transferred arrives at its destination.
This case involves a transfer of garbage from local collection trucks to an open-top trailer, which is parked in the loading bay while it is being loaded.[7] A “transfer” must logically include both the unloading of garbage from one vehicle and the loading of that garbage into another vehicle. The transfer is complete only when the garbage reaches the second vehicle (the open-top trailer). The loading (and the completion of the transfer) occurs in the loading bay.
*602 The Department contends that the transfer should be deemed complete when the garbage leaves the tipping floor. The Department’s contention is contrary to the facts; when the garbage leaves the tipping floor, it is still in the loader bucket, but not yet in the recipient vehicle (the open-top trailer). Further, the Department’s contention is contrary to the Department’s argument, as quoted in above, that “once the waste reaches the loading bay, the transfer .,, is complete.” (Emphasis added.) If the transfer is complete when the garbage reaches the loading bay, the loading bay is necessarily a .part of the “area of transfer activities.”[8]
Defining the “area of transfer activities” to include the loading bay is also consistent with the definition of “transfer station” as a facility where solid waste “is taken from transportation units and placed in other transportation units.” That definition contemplates that the transfer is not complete until the waste is actually placed into the second unit (an event that occurs in the loading bay).
Thus, we conclude that .the Department’s interpretation of its regulations is arbitrary and unreasonable. The Department could have adopted regulations specifically defining the area of transfer activities as the tipping floor or regulations measuring the buffer zones from the tipping floor. It did neither but, instead, attempted to circumvent the regulations in this case[9] by using an unreasonable definition of the phrase “area of transfer activities.”
We also note that the Department's definition is not consistent with the policy reasons for the buffer zones. The odors, sights, and sounds associated with a garbage-transfer facility and their effect on the occupants’ enjoyment of a nearby home are as referable to the loading-bay portion of a garbage-transfer facility as they are to the “tipping floor” of such a facility.
IV, Conclusion
Based on the foregoing, we reverse the judgment of the Court of Civil Appeals and remand the case to that court for an order consistent with this opinion;
REVERSED AND REMANDED.
Stuart, Bolin, Parker, Shaw, Main, and Wise, JJ., concur.

. The pertinent regulations refer to the Alabama State Board of Health. See Ala. Admin. Code (State Board of Health), Rule 420-3-5-.12. The Alabama Department of Public *599 Health is the named party in this case and is apparently "acting for” the State Board of Health under Ala. Code 1975, § 22-1-1.

. A transfer station is a facility for transferring solid waste from local collection trucks to larger vehicles for transportation to á (frequently distant) landfill or disposal facility.

. Torbert’s petition to the Department did not challenge the issuance of the permit-for the transfer station. After Torbert filed her -initial petition, the transfer station at issue was completed, permits were issued, and the facility is now in operation.

. The Department filed a petition for mandamus review with the Court of Civil Appeals challenging the circuit court's power to remand a declaratory-ruling case for additional factual findings. The petition was denied. Ex parte Alabama Dep’t of Public Health, 142 So.3d 650 (Ala.Civ.App.2013).

. The operations plan for the transfer station provides:
"B. TIPPING FLOOR OPERATIONS
[[Image here]]
"... [T]he vehicles will back onto the tipping floor to an unloading area designated by the Attendant. When the vehicle is in position, the waste load will be discharged directly onto the tipping floor.... The heavy equipment operator will continuously push dumped waste towards the north end of the tipping floor. The waste will be placed in the open-top transfer trailer located in the loading bay of the transfer station.”
(Emphasis added.)

. Areas for storage of garbage are not at issue here.

. It is not material that there is an intermediate step in which the garbage is dumped onto the tipping floor and then loaded into the open-top trailer. With or without the intermediate step, the transfer of garbage is from the collection truck to the trailer.

. The Department stresses the instantaneous nature of the transfer; but regardless of the time required to effect the transfer, the transfer is not complete until the garbage lands in the open-top trailer.

. It appears that the designation of the tipping floor as the area of transfer activities was made only after the Department leárned that the site was too small to accommodate the required 500-foot buffer zones without using the more restrictive definition.